UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES. L. EDWARDS, JR.,                    Case No. 12-15153

           Plaintiff,                 Denise Page Hood
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 15)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On November 21, 2012, plaintiff James L. Edwards, Jr., filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 (b)(3), District Judge Denise Page Hood referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 15).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on August

27, 2009, alleging that he was disabled beginning May 31, 2009.  (Dkt. 8-5, Pg ID 132-33).  The claim was initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on September 25, 2009.  (Dkt. 8-3, Pg ID 74).  Plaintiff requested a hearing and on June 3, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Martha M. Gasparovich, who considered the case *de novo*.  (Dkt. 8-2, Pg ID 46-62).  In a decision dated July 21, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 36-42).  Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 17, 2012, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 26-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1947 and was 61 years of age as of his alleged disability onset date and 63 years old at the time of the administrative hearing. (Dkt. 8-2, Pg ID 39, 51).  Plaintiff's relevant work history included work primarily

2

as a residential counselor.  (Dkt. 8-2, Pg ID 58).  In denying plaintiff's claims, defendant Commissioner considered hypertension, status post prostate cancer with prostatectomy, gastroesophageal reflux disease (GERD), dysphagia, history of osteomyelitis in 1968, osteoarthritis of the medial knee joint space (left), mixed hearing loss (unilateral), and obesity as possible bases of disability.  (Dkt. 8-2, Pg ID 38).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since May 31, 2009, the alleged onset date.  (Dkt. 8-2, Pg ID 38).  At step two, the ALJ found that plaintiff does not have an impairment or combination of impairments that has significantly limited his ability to perform basic work-related activities for twelve consecutive months, and that plaintiff therefore does not have a severe impairment or combination of impairments.  (Dkt. 8-2, Pg ID 38-41).  A person who does not have a severe impairment will not be found "disabled."  20 C.F.R. § 404.1520(c).  The ALJ concluded, therefore, that plaintiff has not been under a disability, as defined by the Social Security Act, through the date of the decision. (Dkt. 8-2, Pg ID 41).

### B.    Plaintiff's Claims of Error

Plaintiff claims that (1) the ALJ misapplied the law; (2) the ALJ made an improper credibility finding; (3) the ALJ erred in not considering the effect of

2:12-cv-15153-DPH-MJH   Doc # 17   Filed 12/20/13   Pg 4 of 40   Pg ID 540

plaintiff's impairments on his ability to work; and (4) the ALJ made an improper

Step 2 determination.  First, plaintiff contends that the ALJ appears to have

"confused the durational requirement of the act with the severity requirement of

the act," and argues that just because the ALJ alleges that plaintiff's disability did

not last twelve months does not mean it is non-severe.  Second, plaintiff argues

that the ALJ's credibility finding is flawed because, plaintiff contends, the ALJ

found plaintiff not credible only because she found that plaintiff's impairments

were not severe.  Plaintiff avers that he never testified or claimed that his

hypertension was instrumental in preventing him from working.  Indeed, plaintiff

submits that his hypertension is stable while taking medications.  Thus, plaintiff

argues, he cannot be found "not credible" for claiming his hypertension prevents

him from working when he never made such a claim.  Plaintiff also argues that the

ALJ improperly found plaintiff's testimony concerning his need to frequently

urinate during the day not credible, based on an isolated statement from a doctor's

note in July 2008.  Plaintiff states that the doctor was not plaintiff's urologist, and

that the ALJ ignored a statement by the same doctor that states "incontinence of

urine and erectile dysfunction, related to prostate surgery."  (Tr. 164).  According

to plaintiff, urinary incontinence is common in men who have had surgery for

prostate cancer because removing the prostate through surgery disrupts the way

the bladder holds urine and can result in urine leakage, and because surgery can

damage the nerves that help control bladder function.  Thus, plaintiff continues, it is totally plausible that he would have problems with incontinence as a result of his prostate surgery.  As for plaintiff's "digestive issues," plaintiff asserts that he never alleged this impairment was significant in regards to working, and agrees with the ALJ's assessment that this condition is "stable" since his endoscopy balloon dilation in November 2010.  Thus, plaintiff argues, he cannot be bound not credible for essentially agreeing with the ALJ's analysis.

As for his hearing loss, plaintiff states that the ALJ accurately states that plaintiff has "moderate mixed hearing loss (mostly sensorineural)," but inaccurately portrays his hearing aid as resolving his hearing problem.  Plaintiff states that he testified that he could not hear people in group counseling and that he still has to look directly at a person and see their lips to be able to fully understand what the person is saying.  (Tr. 27, 29).  Thus, plaintiff contends, the ALJ is patently wrong in stating that "the record contains no complaints regarding the claimant's ability to hear when using the hearing aide" (Tr. 16), because his statements at the administrative hearing were made in reference to how his hearing was while wearing a hearing aide.  And, plaintiff argues, the ALJ altogether ignored plaintiff's statement during the hearing test that he complained of "buzzing and ringing in his left ear."  (Tr. 209).

Finally, as to his orthopedic issues, plaintiff argues that the ALJ improperly

5

relied on evidence prior to his alleged onset date in finding the impairment not severe. According to plaintiff, although these injuries to his left leg and right ankle occurred in the distant past, it is natural that over time one would experience age-related arthritis problems with the hardware in his leg and ankle, and plaintiff's complaints that he gets "some aches, you know, in my ankle and also in my leg, you know, and it gets kind of like stiff a little bit" are not over the top or incredible, but consistent with a sixty-one year old man who has multiple pieces of hardware in his lower extremities. Thus, plaintiff argues, the ALJ's credibility determination is flawed and not supported by substantial evidence because the ALJ failed to explain her decision in light of the plaintiff's testimony.

Plaintiff also argues that the ALJ failed to comply with SSR 96-8p by not considering the restrictions or limitations due to all of his impairments, both severe and non-severe. According to plaintiff, the ALJ found that plaintiff's hearing loss and prostate problems were not medically determinable and thus did not consider symptoms related to those impairments in making her residual functional capacity determination. Finally, plaintiff argues that the ALJ made an improper Step Two determination by finding that plaintiff's impairments were non-severe. According to plaintiff, his hearing loss would clearly affect his ability to hear the people he was counseling, and his frequent need to urinate would interrupt his counseling sessions. Thus, plaintiff contends, the ALJ's error at step

6

two resulted in an improper RFC determination at step four, and the ALJ also

improperly discounted plaintiff's testimony about his work-related limitations

when calculating his RFC.  Plaintiff argues that his hearing and prostate

impairments more than meet the burden to establish a severe impairment at step

two of the sequential analysis.  Accordingly, plaintiff asks the Court to grant his

motion for summary judgment and reverse the Commissioner's denial of his

application for disability benefits, or, alternatively, remand his case for further

determination.

### C.      The Commissioner's Motion for Summary Judgment

The Commissioner contends that plaintiff's argument that it was improper

for the ALJ to have considered duration at step two of the sequential analysis lacks

merit.  According to the Commissioner, the step two determination has three

considerations, and one of them is duration, in that in order to establish a severe

impairment at step two, the impairment must either be expected to result in death

or it must be expected to last for a continuous period of at least twelve months.

*See* 20 C.F.R.§ 404.1509, 404.1520(a)(4)(ii).  An impairment that fails to satisfy

the duration requirement cannot be grounds for disability benefits.  42 U.S.C.

§ 423(d)(1)(A); 20 C.F.R.§ 404.1509.  The Commissioner argues that contrary to

plaintiff's suggestion that the ALJ did not discuss the duration of his impairments,

the ALJ noted the duration of multiple conditions, namely gastroesophageal reflux

disease (GERD) and hearing loss.  (Tr. 15-16).  The ALJ noted that plaintiff

received an endoscopic balloon dilation of his esophagus in September 2009, and

one month later, in November 2009, plaintiff reported that he had "100% relief"

following the procedure and no longer complained of reflux, difficulty swallowing

(dysphagia), or painful swallowing (odynophagia).  (Tr. 15, citing Tr. 310-11; *see*

*also* Tr. 241-42).  In June 2010, plaintiff reported that he has not experienced any

gastrointestinal issues since the balloon dilation (Tr. 265), and a year after the

dilation, in November 2010, plaintiff reported that his gastrointestinal issues had

remained stable since September 2009.  (Tr. 15, citing Tr. 422).  Thus, the

Commissioner concludes, it was reasonable for the ALJ to find plaintiff did not

have a gastric condition that lasted or was expected to last longer than twelve

months after the alleged onset date.  Indeed, the Commissioner continues, plaintiff

agrees that he had no severe impairment related to gastrointestinal issues.  (Pl. Br.

10).

The Commissioner states that the ALJ also discussed duration in

conjunction with Plaintiff's alleged hearing loss.  (Tr. 15-16).  In November 2009,

hearing tests showed hearing within normal limits in plaintiff's right ear and

moderate mixed hearing loss (mostly sensorineural) in his left ear.  (Tr. 15, citing

Tr. 209).  The record noted, however, that plaintiff's speech recognition was

"excellent" in both ears.  (Tr. 209).  Plaintiff received a hearing aid on May 20,

8

2010, which he said helped a bit, and the ALJ noted that there were no further complaints regarding plaintiff's ability to hear after receiving the hearing aid. (Tr. 15, citing Tr. 29). The Commissioner concludes that it was reasonable for the ALJ to find the absence of complaints weighed against plaintiff's allegation of hearing loss continuing past May 20, 2010, particularly given the fact the plaintiff visited with his primary care physician after receiving the hearing aid and made no complaints. (*See e.g.*, Tr. 265 (June 2010), Tr. 422-23 (November 2010)). Thus, the Commissioner contends, it was reasonable for the ALJ to find plaintiff did not have a hearing loss condition that lasted or was expected to last longer than twelve months after the allege onset date.

The Commissioner further argues that the ALJ reasonably found that plaintiff's impairments (singularly or in combination) were not severe because they would not significantly limit him from performing basic work activities. (Tr. 13-16). While the step two severity standard is low, it is not automatic, and the mere presence of an impairment does not mean that it is severe. *See Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities for a continuous period of time."); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) (the "mere diagnosis of arthritis . . . says nothing about the severity of the

9

condition"). The Commissioner contends that the ALJ found that plaintiff's hypertension was not a severe impairment (Tr. 15), and that plaintiff agrees. (Dkt. 10, Pg ID 481-82). According to the Commissioner, plaintiff suggests there was no reason for the ALJ to have considered or discussed hypertension because plaintiff had not discussed hypertension or any symptoms related to hypertension at the hearing. (*Id.*). The Commissioner contends that while plaintiff did not discuss hypertension at the hearing, he did allege that hypertension was one of the conditions that prevented him from working in his application materials (Tr. 130), and he complained that he could not work because he was "dizzy." (*Id.*). Thus, the Commissioner argues that the ALJ reasonably considered evidence related to hypertension and, as plaintiff concedes, reasonably found hypertension would not interfere with plaintiff's ability to work. (Tr. 15).

The Commissioner further contends that at the hearing, plaintiff complained that he could not work because of issues with frequent urination related to prostate surgery in February 2008. (Tr. 29-30). Plaintiff said he had to urinate approximately every 15 to 20 minutes and that he had leaking urine. (Tr. 30). According to the Commissioner, the ALJ accepted that plaintiff experienced urinary incontinence issues in the months immediately following his February 2008 surgery. (Tr. 15). However, by June 2008, plaintiff told his doctor, R. Rudraraju, M.D., that he no longer needed adult diapers for incontinence and that

he urinated four to five times during the night, but only four to five times during the day. (Tr. 15, citing Tr. 162). Dr. Rudraraju opined that plaintiff's condition would was "not likely preventing him from doing his daily activities and the usual duties of his occupation." (Tr. 164). The ALJ gave great weight to this treating physician opinion. (Tr. 16). While plaintiff contests the ALJ's reliance on Dr. Rudraraju's opinion because the opinion was made almost one year before his alleged onset of disability (Dkt. 10, Pg ID 482), the Commissioner argues that, as the ALJ noted, there was no evidence of any worsening in plaintiff's condition following Dr. Rudraraju's opinion (Tr. 16), and plaintiff cites no evidence of worsening. (Dkt. 10, Pg ID 482-83). Plaintiff also contests the opinion because it was made by his primary care doctor and not a urologist. (*Id.*). The Commissioner points out, however, that plaintiff's visits with urologists do not suggest any worsening or any symptoms that would interfere with plaintiff's ability to work. At a urology consult in October 2009, plaintiff denied *any* urinary symptoms ("pt does no [sic] have any urinary sx at all") (Tr. 238), and plaintiff again denied urinary symptoms in November 2009. (Tr. 230-31). In June 2010, plaintiff denied any issues with frequency, urgency, or nocturia (the need to urinate at night) (Tr. 192), and at a urology appointment in September 2010, plaintiff indicated that he has "minimal" stress urinary incontinence when he strains, but did not indicate any other urinary symptoms. (Tr. 414). Thus, the

11

Commissioner concludes, it was reasonable for the ALJ to rely on Dr. Rudraraju's opinion and find that plaintiff's status post-prostate surgery was not severe.

The Commissioner also argues that the ALJ reasonably found plaintiff's hearing impairment was not severe. As discussed above, plaintiff did not complain of any hearing loss issues after he received his hearing aid in May 2010 (less than one year after his alleged onset of disability). (Tr. 265 (June 2010), Tr. 422-23 (November 2010)). The Commissioner notes that, indeed, plaintiff cites no record evidence of complaints to treatment providers or to visits to adjust the hearing aid. It is plaintiff's burden to prove the severity of his impairment, and the Commissioner contends that plaintiff failed to satisfy his burden. Moreover, the Commissioner continues, even prior to the hearing aid, hearing tests showed that plaintiff had "excellent" speech recognition in both ears. (Tr. 209, 203). Therefore, the Commissioner concludes, under the circumstances, it was reasonable for the ALJ to find the lack of treatment or complaints inconsistent with allegations of continued hearing loss, and find that hearing loss was not a severe impairment following receipt of the hearing aid. (Tr. 15).

The Commissioner states that the ALJ also properly found that plaintiff's leg and ankle condition was not a severe impairment. Plaintiff had osteomyelitis (a bone infection) in his left thigh related to a 1968 gunshot wound (Tr. 162), as well as osteoarthritis in his left knee. In July 2008, when asked about his leg by

12

Dr. Rudraraju, plaintiff said he had no chronic pain, he did not use any assistive device, he did not take medication, he had no restriction of daily or work activities, and that he could walk two to three miles at a stretch. (Tr. 162). In assessing plaintiff's allegations, the ALJ gave great weight to Dr. Rudraraju's opinion that plaintiff's condition would was "not likely preventing him from doing his daily activities and the usual duties of his occupation." (Tr. 16, citing Tr. 164). Although plaintiff contests the ALJ's reliance on the opinion because the opinion was made almost one year before his alleged onset of disability (Dkt. 10, Pg ID 482), as the ALJ noted, there was no evidence of any worsening in plaintiff's condition. (Tr. 16). And, the Commissioner points out, plaintiff cites no evidence of worsening. (Dkt. 10, Pg ID 483). The Commissioner further argues that to the extent plaintiff asserts that there was an additional ankle injury or ankle surgery in 2005, the ALJ properly noted that there was no evidence of such in the record. (Tr. 16). Plaintiff did not mention an ankle injury or surgery to Dr. Rudraraju (Tr. 162-63), and when plaintiff relayed his past surgical history (PSH) to treatment providers, he did not mention ankle surgery in 2005. (*See e.g.*, Tr. 197, 206, 220). Indeed, the Commissioner contends, plaintiff cites no medical record for his assertion that he has pins in his ankle. Further, in September 2009, plaintiff told treatment providers that he was walking up to six miles, three or four times per week, and could rake leaves. (Tr. 231). The Commissioner argues that in light of

13

the absence of evidence of worsening, it was reasonable for the ALJ to rely on Dr. Rudrarju's opinion and find there was no severe impairment. The Commissioner argues that while plaintiff may disagree with the ALJ, the ALJ's findings were well within the zone of reasonable choices, *see Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986), and because the ALJ made a reasoned and reasonable decision based on substantial evidence, the ALJ's decision should be affirmed.

The Commissioner further argues that the ALJ's credibility determination is entitled to considerable deference, and that this Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact"). The Commissioner contends that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record, including the degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources. SSR 96-7p, 1996 WL 374186 at *5. The Commissioner contends that the ALJ explicitly explained how plaintiff's allegations were inconsistent with the record evidence. For example, contrary to

14

plaintiff's allegations of needing to urinate every 15-20 minutes, the ALJ notes that Dr. Rudraraju opined that plaintiff's urinary issues would not interfere with daily activities or his work and that plaintiff reported that he urinated only four to five times during the day.  (Tr. 162-64).

The Commissioner notes that while objective evidence is not the only factor relevant to determining the credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ when evaluating the credibility of a plaintiff's symptoms.  *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").  Thus, in considering plaintiff's allegations of leg and ankle pain, the ALJ reasonably noted the normal physical findings by Dr. Rudraraju (Tr. 16, citing Tr. 163), and the absence of any objective findings concerning Plaintiff's ankle.  (*Id.*).  The Commissioner argues that while plaintiff may disagree with the ALJ, the ALJ's credibility findings were well within the zone of reasonable choices, *see Mullen*, 800 F.2d at 595, and the ALJ's assessment of plaintiff's credibility should be afforded its due deference. Therefore, the Commissioner concludes, the ALJ's decision was supported by substantial evidence in the record as a whole, and the Court should affirm the ALJ's decision.

### D.    Plaintiff's Reply Brief

Plaintiff states that the "severity" step is a "de minimis hurdle in the disability determination process," and that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience" and must be "obviously lacking medical merit" and "totally groundless solely from a medical standpoint" to be found non-severe. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Plaintiff argues that the record clearly establishes that his impairments have more than a minimal effect on his ability to work, and that the ALJ was required to consider the effects of all of his impairments, both singularly and combined. Plaintiff contends that pursuant to SSR 96-8p, an ALJ can only find a claimant to have no functional limitation when "there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction."  And, plaintiff continues, his impairments unquestionably lasted at least twelve months, noting that the record indicates plaintiff sought treatment between February 2010 and March 2011 for "active problems" of obesity, hypertension, prostate cancer, GERD, hearing loss, erectile disorder and dysphagia.  (Tr. 191, 202, 205, 417, 433). Further, plaintiff continues, the record contains objective evidence reflecting over a period of twelve months, that plaintiff's impairments are severe and more than a

slight abnormality, including x-rays of plaintiff's left femur revealing an old fracture and deformity of the distal left femoral diaphysis in July 2008 (Tr. 181), a balloon dilation of his esophagus (Tr. 242-43), audiology reports in April and November 2009 showing a moderate mixed hearing loss (mostly sensorineural) in the left ear, with buzzing and ringing in the ear (Tr. 196, 209, 230), a December 2009 MRI showing a left basal ganglia lesion in the left ear (Tr. 200), a February 2010 MRI confirming a left petorisitis and left basal ganglia lesion (Tr. 259-60), and in March 2010, plaintiff was noted to have buzzing and ringing in his left ear due to his acoustic neuroma.  (Tr. 270).

Plaintiff also argues that the ALJ's credibility assessment is erroneous because, contrary to the Commissioner's assertion, there are no noted inconsistencies in the record, and the ALJ had no basis to discount plaintiff's credibility.  Plaintiff asserts that he never testified or argued that his hypertension and digestive issues prevented him from working, and in fact agrees with the ALJ's assessment that his digestive issue is "stable" since his endoscopy balloon dilation in November 2010.  Plaintiff further argues that the Commissioner erroneously relies on an outdated doctor's note in support of its argument that plaintiff's claim of frequent urination is inconsistent with the medical record. Plaintiff contends that the doctor at issue is not a urologist and states in the same note that plaintiff "has been following up with his urologist frequently" (Tr. 164),

17

and, more importantly, the ALJ completely ignored the doctor's statement of "incontinence of urine and erectile dysfunction, related to prostate surgery." (Tr. 164). Plaintiff argues that the ALJ improperly relied on isolated statements from the medical evidence to discredit plaintiff's testimony concerning his need to frequently urinate during the day, and that it is reasonable that radical prostatectomy surgery might cause some urinary incontinence, as argued in plaintiff's opening brief.

Plaintiff further argues that the ALJ incorrectly stated that "the claimant stated at the hearing that the hearing aid helped a bit" (Tr. 15), and that this testimony is nowhere in the record. Indeed, plaintiff contends, he testified that he could not hear people in group counseling (Tr. 27), and that he still had to look directly at the person and see their lips to be able to fully understand what the person was saying. (Tr. 29). And, plaintiff continues, the ALJ altogether ignored plaintiff's statement during a hearing test that he has "buzzing and ringing in his left ear." (Tr. 209). Therefore, plaintiff concludes, the ALJ's analysis of plaintiff's credibility is cherry-picked from select portions of the record and is not supported by substantial evidence in the record.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

19

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.
Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a
claimant's subjective complaints and may ... consider the credibility of a claimant
when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502
F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the
claimant are to be given great weight, particularly since the ALJ is charged with
observing the claimant's demeanor and credibility.") (quotation marks omitted);
*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is
appropriate where an ALJ finds contradictions among medical reports, claimant's
testimony, and other evidence.").  "However, the ALJ is not free to make
credibility determinations based solely upon an 'intangible or intuitive notion
about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.
Rul. 96-7p, 1996 WL 374186, *4.

  If supported by substantial evidence, the Commissioner's findings of fact
are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the
Commissioner's decision merely because it disagrees or because "there exists in
the record substantial evidence to support a different conclusion." *McClanahan v.
Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800
F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a
scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

     The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

**B.**     **Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

23

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

**C.    Analysis**

>    **1.    The ALJ's Conclusion that Plaintiff's Impairments–Alone or in Combination–are Not Severe is Supported by Substantial Evidence**

As set forth above, the ALJ found that plaintiff has several medically determinable impairments: hypertension, status post prostate cancer with

24

prostatectomy, gastroesophageal reflux disease (GERD), dysphagia, history of osteomyelitis in 1968, osteoarthritis of the medial knee joint space (left), mixed hearing loss (unilateral), and obesity. (Tr. 38). The ALJ then concluded that none of these impairments, alone or in combination, are severe within the meaning of the Act. Because the ALJ found that plaintiff did not have a severe impairment at step two of the sequential analysis, she did not proceed further with the disability analysis. Plaintiff argues that this conclusion is not supported by substantial evidence.

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . ., or a combination of impairments that is severe and meets the durational requirement, then [he] is not disabled."). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled' as defined by the Act. . . ." *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007). A "severe"

25

impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

In the Sixth Circuit, step two of the sequential disability process is considered a "de minimis hurdle" designed to subject to dismissal only those claims that are "totally groundless" from a medical standpoint. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long*

26

*v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir. 2001) (citation omitted).  Nonetheless, not all impairments are severe: "The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time."  *Despins*, 257 Fed. Appx. at 930 (citations omitted).  "In considering whether a claimant has a severe impairment, an ALJ must not accept unsupported medical opinions or a claimant's subjective complaints."  *Younan v. Comm'r of Soc. Sec.*, 2012 WL 5439286, at *8 (E.D. Mich. Aug. 14, 2012) (citing *Weckbacher v. Comm'r of Soc. Sec.*, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012)), *adopted by* 2012 WL 5439280 (E.D. Mich. Nov. 7, 2012).

The ALJ addressed each of plaintiff's medically determinable impairments and found that they were not "severe," and thus found that plaintiff was not disabled at step two of the sequential evaluation.  With respect to plaintiff's hypertension, the ALJ found that plaintiff has treated his hypertension, "including regular office visits, medication, diet and exercise" and his hypertension was described as "stable" in November 2009 (Tr. 15, citing Tr. 290), and thus concluded that plaintiff's "stable" hypertension did not appear to produce any physical symptoms and did not interfere with his ability to work.  (Tr. 15).  The ALJ similarly found that plaintiff's "digestive difficulties" have been "stable" since he received an endoscopic balloon dilation of the esophagus in September

27

2009, and that the record contains no complaints of digestive problems since that time, and thus this impairment is not severe. (Tr. 15, citing Tr. 422). Plaintiff concedes that his hypertension is stable while taking medications and states that he "never testified nor claimed that his hypertension was instrumental in preventing him from working." (Dkt. 10, Pg ID 481-82). Plaintiff similarly concedes that he has never alleged that his "digestive issues" constitutes a severe impairment, and agrees with the ALJ's assessment that this condition is "stable" since his endoscopy balloon dilation in November 2010. ((Dkt. 10, Pg ID 483). The undersigned suggests that the record evidence supports the ALJ's finding that plaintiff's hypertension and digestive issues are stable and do not interfere with his basic work activities, and that these impairments therefore are not "severe."

With respect to plaintiff's orthopedic issues, the ALJ found:

> [T]he claimant experienced osteomyelitis in his left thigh in 1968 due to a gunshot wound. He has had no recurrence of infection since that time, but a July 2008 X-ray revealed generalized osteopenia and mild degenerative osteoarthritis of the medial knee joint space. (Exhibit 2F). However, the examining physician noted that the claimant had normal range of motion in his left leg and hip, and stated that the claimant's condition was not likely to prevent him from his daily routine activities or the usual duties of his occupation. (Id., p. 6). The claimant stated at the hearing that he hurt his right ankle after falling in 2005. He stated that he has two pins in this ankle, but the record contains no evidence of this surgery.

28

(Tr. 16). Plaintiff complains that the ALJ erred in relying on his treating physician's report dated prior to plaintiff's disability onset date. However, the undersigned suggests that the ALJ properly relied, in part, on plaintiff's treating physician's 2008 opinion that plaintiff's osteoarthritis does not likely prevent him from doing his daily routine activities and the usual duties of his occupation. Plaintiff's treating physician, Dr. Rudraraju, based his opinion on an examination revealing normal range of motion of the left knee and left hip joints, a normal gait, no frequent inflammation or discharge, no recurrent osteomyelitis, and plaintiff's report that he can walk two to three miles at a stretch. (Tr. 162-64). The ALJ also correctly noted that the record does not contain any medical evidence that this impairment has worsened since Dr. Rudraraju's 2008 examination. (Tr. 16). Indeed, plaintiff reported in November 2009 that he walks up to six miles, three to four times a week, climbs a flight of stairs daily, and rakes the leaves. (Tr. 305). Plaintiff, tellingly, has not cited to any record evidence supporting his contention that his orthopedic issues constitute a severe impairment, and instead relies on his hearing testimony that he "get[s] some aches, you know, in my ankle and also in my leg, you know, and it gets kind of like stiff a little bit," and his contention that "it is only natural that over time one would experience age related arthritis problems with such hardware." (Dkt. 10, Pg ID 484). However, plaintiff's testimony, standing alone, is insufficient to establish that the ALJ erred in finding

29

that plaintiff's leg and ankle impairments were not severe. *See Younan*, 2012 WL 5439286, at *8 ("In considering whether a claimant has a severe impairment, an ALJ need not accept unsupported medical opinions or a claimant's subjective complaints."). It is well-settled that the mere existence of an impairment does not mean that the impairment is severe within the meaning of the second sequential step, and "[w]hen doctors' reports contain no information regarding physical limitations on the intensity, frequency, and duration of pain associated with a condition, [the Sixth Circuit] has regularly found substantial evidence to support a finding of no severe impairment." *See Long*, 1 Fed. Appx. at 331. Accordingly, the undersigned suggests that the ALJ's opinion that plaintiff's orthopedic impairment is not severe is consistent with and supported by the record evidence, and should be affirmed.

Plaintiff focuses his claims of error on the ALJ's alleged error in finding that plaintiff's hearing and prostate impairments were not severe, arguing that the ALJ failed to consider the effect of plaintiff's hearing impairment and need to frequently use the bathroom on his ability to work. Plaintiff argues that "[c]learly, [his] hearing loss would affect his ability to hear the people he was counseling. Additionally, having to interrupt a counseling session because of the need to use the bathroom would fall under this category." (Dkt. 10, Pg ID 485-86). The ALJ recognized that plaintiff was diagnosed with prostate cancer in December 2007, he

30

underwent radical prostatectomy surgery in February 2008, he did not receive any chemotherapy, radiation therapy, seed implantation, or hormonal therapy, and he has not had a recurrence of prostate cancer.  (Tr. 15).  The ALJ acknowledged that plaintiff has had problems with erectile dysfunction and increased urinary frequency since his surgery, and that plaintiff stated that he had to wear diapers for three months following the surgery due to urinary incontinence, but that by July 2008, plaintiff stated he no longer needed the diapers and that while he urinated four to five times during the night, he typically urinated only four to five times during the day.  (Tr. 15, citing Tr. 162).  The ALJ further noted that plaintiff's treating physician stated in July 2008 that plaintiff's condition was not likely to prevent plaintiff from doing his daily routine activities or the usual duties of his occupation, and found that "the record does not reflect that the claimant's increased urination is severe enough to have more than a minimal effect on the claimant's ability to work."  (Tr. 15).  The ALJ therefore concluded that this impairment was not severe.

Plaintiff does not refer to any record evidence to the contrary, other than the doctor's diagnoses, which include "[i]ncontinence of urine and erectile dysfunction, related to prostate surgery."  However, as the Sixth Circuit has stated, "[t]he mere existence of those impairments . . . does not establish that [plaintiff] was significantly limited from performing basic work activities for a continuous

31

period of time." *Despins*, 257 Fed. Appx. at 930. Similarly, plaintiff's argument
that urinary incontinence is common in men who have had surgery for prostate
cancer, and thus it is "plausible" that plaintiff would have problems with
incontinence as a result of his prostate surgery, does not establish that the ALJ's
finding is not supported by substantial evidence because that hypothetical
"plausibility" does not constitute record evidence that plaintiff's impairment was
severe. Finally, plaintiff's argument that the ALJ erred in relying on Dr.
Rudraraju's July 2008 opinion because it pre-dated plaintiff's disability onset date
lacks merit. The ALJ expressly acknowledged that "although this opinion was
given prior to the claimant's alleged onset date, it is still given weight, as it
regards two of the claimant's still-existing medically determinable impairments.
The record does not contain any medical evidence that either of these impairments
has worsened since Dr. Rudraraju's 2008 examination." (Tr. 16). In fact, the
record reveals that plaintiff reported in October 2009 that he "does not have any
urinary [symptoms] at all" and that he "does not leak urine most of the times" (Tr.
238), and in June 2010 plaintiff denied issues with frequency, urgency or nocturia.
(Tr. 266). Plaintiff has cited no record evidence to the contrary, other than his
own subjective complaints and his own testimony at the administrative hearing
that it is "reasonable that radical prostatectomy surgery might cause some urinary
incontinence." (Dkt. 16, Pg ID 534). "Where [plaintiff] bears the burden at Step

32

Two of establishing that his impairments are severe, his unsupported allegations are simply insufficient." *Walk v. Comm'r of Soc. Sec.*, 2013 WL 1209972, at *8 (E.D. Mich. Feb. 25, 2013) (noting that "[a]side from Walk's own testimony, however–which the ALJ reasonably deemed less than fully credible–there is no medical evidence that he would need to be 'near a restroom' or work in 'an occupation that would allow for unscheduled restroom breaks,' as Walk now alleges."), *adopted by* 2013 WL 1209969 (E.D. Mich. Mar. 25, 2013).  Therefore, the undersigned suggests that the ALJ's finding that plaintiff's prostate issues are not severe is supported by substantial evidence and should be affirmed.

As for plaintiff's hearing loss, the ALJ noted that a November 2009 examination revealed hearing within normal limits in the right ear and a moderate mixed hearing loss (mostly sensorineural) of the left ear, that plaintiff received a hearing aid in May 2010 and stated that the hearing aid helps a bit, and that the record reflects no complaints regarding plaintiff's ability to hear when using the hearing aid.  (Tr. 15-16, citing Tr. 209).  Plaintiff argues that the ALJ inaccurately portrays plaintiff's hearing aid as resolving his hearing problem because he testified at the hearing that he cannot hear the people in group counseling and still has to look directly at the person and see their lips to be able to fully understand what the person is saying.  (Dkt. 10, Pg ID 483, citing Tr. 27, 29).  Plaintiff further complains that the ALJ ignored his statement during his hearing test that he has

33

"buzzing and ringing in his left ear." (Tr. 209). However, as the ALJ noted, plaintiff did not complain to his doctors of any hearing loss after he received his hearing aid in May 2010 (Tr. 15-16, 265, 422-23), and the record reflects that plaintiff's hearing was well within normal limits in his right ear and his speech recognition was excellent bilaterally. (Tr. 211). And, plaintiff fails to cite to any record evidence to the contrary. As the Sixth Circuit has held, "[w]hen doctors' reports contain no information regarding physical limitations on the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." *Long*, 1 Fed. Appx. at 331. Using this standard, substantial evidence supports the ALJ's finding that plaintiff's medically determinable impairments were not "severe' impairments.

In sum, although plaintiff testified that he stopped working because he had difficulty hearing others in group counseling sessions and because he had to frequently urinate and his ankle and leg made it difficult to move around (Tr. 27), the objective medical evidence simply does not support his subjective characterization of his symptoms and the administrative record contains no medical evidence indicating that plaintiff's impairments limited his ability to perform basic work activities. As such, plaintiff did not satisfy his burden, and the ALJ's decision is supported by substantial evidence. While one could possibly

34

reach a different conclusion, on this record, the ALJ's step two finding was reasonable, and the undersigned finds no error justifying remand. *See Mullen*, 800 F.2d at 545 (substantial evidence "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts") (internal quotation marks omitted).[1]

### 2. The ALJ's Credibility Determination is Supported by Substantial Evidence

Plaintiff contends that the ALJ erred in evaluating the credibility of his subjective complaints, arguing that the ALJ mischaracterized the record in an attempt to berate his credibility. Specifically, plaintiff alleges that he never testified or claimed that his hypertension or digestive issues prevented him from working, and in fact submits that his hypertension is stable while taking medications and his digestive issue is stable since his endoscopy, and thus the ALJ improperly discredited plaintiff's credibility because "Plaintiff cannot be found [not] credible for essentially agreeing with the ALJ's analysis." Plaintiff also claims that the ALJ improperly relied on his doctor's July 2008 opinion that

---

[1] To the extent plaintiff complains that the ALJ erred by not considering his claimed impairments in making a residual functional capacity (RFC) determination, that claim fails. The ALJ was not required to continue the sequential evaluation beyond step two once he found plaintiff did not have a severe impairment. *See Gist v. Sec'y of Health & Human Servs.*, 736 F.2d 352, 357-58 (6th Cir. 1984) (recognizing that there was no need for the Commissioner to consider other factors after finding the claimant not disabled at step two). Therefore, the ALJ was not required to evaluate plaintiff's claim at step three of the sequential evaluation or make an RFC determination.

plaintiff's prostate issues did not prevent him from doing his daily routine to impugn his credibility, while ignoring that same doctor's statements of "incontinence of urine and erectile dysfunction, related to prostate surgery" and that he "has been following up with his urologist frequently."   Plaintiff further contends that his testimony regarding his hearing loss and orthopedic issues is consistent with the medical record evidence.

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's

claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned agrees with the ALJ that the objective record evidence did not support plaintiff's claims of limitations.  Here, as discussed above, the ALJ considered plaintiff's allegations in light of the other evidence in the record and sufficiently explained how plaintiff's allegations were inconsistent with the record evidence.  For example, contrary to plaintiff's claim at the hearing that he needed to urinate every 15 to 20 minutes, the ALJ properly noted that plaintiff's treating physician opined that plaintiff's urinary issues would not interfere with daily activities or work, and plaintiff reported to that doctor that he urinated only four to five times during the day.  (Tr. 162-64).  And contrary to plaintiff's claim that he can only stand for maybe 10 or 15 minutes at a time before he has to sit down, and can walk a couple of blocks before needing to stop and rest (Tr. 30, 141), the ALJ properly noted that plaintiff's treating physician noted that plaintiff had a normal range of motion in his left leg and hip and stated that plaintiff's condition would not likely prevent him from his daily routine activities or the usual duties of his

37

occupation. (Tr. 16). Moreover, plaintiff reported to his doctor in November 2009 that he walks up to six miles, three to four times a week, climbs a flight of stairs daily, and rakes the leaves (Tr. 305), and that he has no pain in his legs while walking and no joint pain or weakness in any extremities. (Tr. 308). The ALJ further properly noted that while plaintiff claims that he hurt his right ankle in 2005 and has two pins in his ankle, the record contains no evidence of this surgery. (Tr. 16). The absence of complaints regarding the claimed severe impairments, and the absence of any evidence of worsening of plaintiff's claimed impairments, weighs against plaintiff's allegation that these conditions persisted and significantly limited his ability to do basic work activities. Further, to the extent that plaintiff asserts that he never claimed his hypertension prevented him from working, the undersigned notes that on his initial application for disability benefits, plaintiff complained that his ability to work was limited by high blood pressure, stroke, swollen ankle, and heart problems. (Tr. 130). Thus, contrary to plaintiff's contention that the ALJ should not have considered whether plaintiff's hypertension was a severe impairment, plaintiff himself claimed that his high blood pressure prevented him from working in his disability application. (*Id.*).[2] Therefore, while plaintiff may disagree with the ALJ's credibility finding, the

---

[2] The undersigned notes, however, that plaintiff did not mention, in his initial disability application, a claim for disability due to hearing loss or the need to frequently urinate. (Tr. 130).

undersigned suggests that the findings were well within the zone of reasonable choices, *see Mullen*, 800 F.2d at 595, and the ALJ's credibility determination is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

39

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 20, 2013                    s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on December 20, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kerry J. Spencer, Meghan O'Callaghan, William L. Woodard and the Commissioner of Social Security.

                                            s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov